UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| JOSHUA DUNN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 15-2304-JDT-cgc |
| | ) | |
| JAMES HOLLOWAY, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER DISMISSING COMPLAINT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On May 8, 2015, Plaintiff Joshua Dunn ("Dunn"), an inmate at the West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 along with a declaration in support of indigency. (ECF Nos. 1 & 2). After Dunn filed the necessary documentation, the Court issued an order on June 5, 2015, granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 6.) The Clerk shall record the Defendants as former WTSP Warden James Holloway; WTSP Classification Coordinator Denys Yeager; WTSP Correctional Officer James Sonderman; WTSP Unit Manger Sharon Rose; and Robert Henry, WTSP Warden over Program Operations.

I. The Complaint

The complaint alleges that Dunn was transferred to WTSP on October 14, 2014 to take part in the security management unit program ("SMU"). (ECF No. 1 at 3.) According to Dunn,

the purpose of the SMU program is to, "establish separate restricted population housing units that support the management and rehabilitation of close, medium and minimum restricted inmates with those documented disruptive behavior and/or those inmates that reliable intelligence indicates are actively involved in S.T.G. [Security Threat Group] activity within the Tennessee Department of Correction." (*Id.*) On December 1, 2014, Defendant Rose received a note from an unknown person threatening Dunn's life. (*Id.*) Consequently, on December 3, 2014, Dunn was moved to Unit 1 for his safety. (*Id.* at 4) Several weeks later, on or about January 23, 2015, Dunn was moved to Unit 5, "reason unknown." (*Id.*)

On January 25, 2015, Dunn began receiving threats from other gang members in the same pod with him. (*Id.*) On January 27, 2015, Dunn's mother began receiving messages threatening Dunn; some of the messages also identified his children by name. (*Id.*) That same day, Dunn wrote Defendant Sonderman requesting protective custody because his life was in danger and enclosed the threatening notes he had received. (*Id.*) However, nothing was done. The next day, January 28, 2015, Dunn alleges that he could not take the threats to his life and family any more and decided to end it himself. He was placed on suicide observation under the care of Dr. McSpadden, who is not a party to this complaint. (*Id.* at 5.) Dunn does not allege that he actually attempted suicide at that time. Dunn states that Dr. McSpadden sent emails to Defendants Holloway and Henry about Dunn's safety, but no action was taken. (*Id.*)

On February 11, 2015, after he had been on mental health observation for two weeks, Dunn was sent back to Unit 5 "per [Defendant] Rose all defendants refused to place [Dunn] in protective custody and would not move him from Unit 5." (*Id.*) Dunn began receiving threats from other inmates regarding his food as well as threats of assault. (*Id.*) As a result, he alleges he could not eat. (*Id.*) Two days later, on February 13, 2015, Dunn alleges he cut his arm

because he could no longer take the threats; therefore, he was placed back on suicide watch until February 23, 2015. (*Id.* at 6.) Dunn contends that he wrote many letters to various Defendants named in this complaint, but nothing was done. (*Id.*)

On February 12, 2015, Dunn wrote an emergency grievance about his need for protective custody, but the only response was from Defendant Yeager, who stated that Dunn could not be placed in protective custody. (*Id.*) No further investigation was conducted. (*Id.*) Dunn seeks compensatory and punitive damages. (*Id.* at 9.)

## II. Analysis

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

    (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

    (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rules of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they

3

must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*,

518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Dunn filed his complaint pursuant to 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

5

Dunn's claims that Defendants failed to protect arise under the Eighth Amendment to the United States Constitution, which prohibits cruel and unusual punishment. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Williams v. Curtin*, 631 F.3d at 383; *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298.

"In the prison context, the Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." *Clark v. Corr. Corp. of Am.*, 98 F. App'x 413, 415 (6th Cir. 2004). The objective component is not satisfied by allegations that an inmate reasonably feared assault:

> The plaintiff primarily requests monetary relief from the defendants in the form of compensatory and punitive damages. Requests for damages, however, seek to compensate plaintiffs for past injuries. *See Carey v. Piphus*, 435 U.S. 247, 254-57, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978). In this case, Wilson advances no allegation that the Aryan Brotherhood actually injured him physically. Nor does he even hint that he has suffered any emotional or psychological injury from the alleged threats. Even if he had claimed a non-physical injury such as fear of assault at the hands of the prison gang, however, monetary damages for such alleged harm would not have been appropriate in *this* Eighth Amendment context. The Supreme Court itself has noted that "*extreme* deprivations are required to make out a conditions-of-confinement claim," *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (emphasis added), as opposed to an excessive force claim. No such egregious failures on the part of prison officials have been established here. Also, as the Seventh Circuit recently concluded in *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996):
>
>> However legitimate [the plaintiff's] fears may have been, we nevertheless believe that it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment. [A] claim of psychological injury does not reflect the deprivation of "the minimal civilized measures of life's necessities," *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 ...

6

> (1991); *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 ... (1981), that is the touchstone of a conditions-of-confinement case. Simply put, [the plaintiff] alleges, not a "failure to prevent harm," *Farmer*, 511 U.S. [at 834], 114 S. Ct. 1970 ..., but a failure to prevent exposure to risk of harm. This does not entitle [the plaintiff] to monetary compensation. *See Carey*, 435 U.S. 247, 258-59, 98 S. Ct. 1042, 55 L. Ed. 2d 252 ("In order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question—just as the common-law rules of damages themselves were defined by the interests protected in the various branches of tort law.").

*Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (alterations & ellipses in original); *see also Osborne v. Little*, No. 3:07-1290, 2008 WL 4057093, at *2-3 (M.D. Tenn. Aug. 29, 2008) (same).

While the complaint does not allege that Dunn was physically injured by another inmate or by any of the Defendants, he does allege that he was suicidal and inflicted physical harm on himself due to the mental anguish caused by the threats he was receiving. Such an allegation, at the very least, satisfies the requirement of 42 U.S.C. § 1997e(e) that there be a "prior showing of physical injury" before a prisoner can recover for mental or emotional anguish. *See Arauz v. Bell*, 307 F. App'x 923, 929 (6th Cir. 2009) (reversing district court's decision that the plaintiff's Eighth Amendment claims were frivolous). However, in this case, Plaintiff alleges that he cut his arm once during the approximately four-week period he was on suicide watch, which ended on February 23, 2015. (ECF No. 1 at 6.) He does not allege that he made any further attempt to harm himself prior to the signing of the complaint on April 29, 2015. Therefore, the objective component of an Eighth Amendment claim has not been satisfied.

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297,

7

302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997); *Street*, 102 F.3d at 814; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus,

> [a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id*. at 837-38 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment."). To show that a corrections officer was deliberately indifferent to the risk that an inmate would be assaulted, there must be a showing that the assault was "reasonably preventable." *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 512 (6th Cir. 2001) (citing *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996)); *see also Bishop v. Hackel*, 636 F.3d 757, 767 (6th Cir. 2011) ("[A] prison official may be held to be deliberately indifferent to a substantive risk to inmate safety if he is aware that an inmate is vulnerable to assault and fails to protect him."). In

this case, the complaint does not adequately allege that the Defendants were deliberately indifferent to the risk that inmates in Unit 5 posed to Dunn's safety or to his threats to harm himself.

In addition, Defendant Holloway cannot be held liable because of his position as warden. Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). Dunn has not alleged that Holloway had sufficient personal involvement to support a § 1983 claim.

For all of the foregoing reasons, Dunn's complaint is subject to dismissal in its entirety for failure to state a claim on which relief can be granted.

Plaintiff has also filed a motion to dismiss this case voluntarily without paying the filing fee. (ECF No. 12.) He states that the Defendants no longer work at the WTSP. However, the filing fee may not be waived merely because a litigant decides to dismiss the case. *See McGore*

*v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also In re Alea*, 286 F.3d 378, 381 (6th Cir. 2002). Therefore, in light of the dismissal of this case for failure to state a claim, the motion for voluntary dismissal will be denied.

### III. Standard for Leave to Amend

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d at 951; *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, leave to amend is not warranted.

IV. Conclusion

The Court DISMISSES Dunn's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and the motion for voluntary dismissal (ECF No. 12) is DENIED. Leave to amend is also DENIED.

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Dunn in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Dunn would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Dunn nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore* 114 F.3d at 610-11. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, Dunn is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated

*in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Dunn, this is the second dismissal[1] of one of his cases as frivolous or for failure to state a claim. This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

                                      s/ **James D. Todd**
                                      JAMES D. TODD
                                      UNITED STATES DISTRICT JUDGE

---

[1] Dunn previously filed *Dunn v. City of Memphis*, No. 09-2521-JDT-cgc (W.D. Tenn. Jan. 30, 2010) (dismissed for failure to state a claim).